Judge Marc L. Barreca
Chapter 7
Hearing Location: Marysville, WA
Hearing Date: March 8, 2017
Hearing Time: 10:00 a.m.
Response Date: March 1, 2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | |
|---|---|
| In re: | ) Case No. 12-11140 MLB |
| | ) Chapter 7 |
| KENT DOUGLAS POWELL and | ) |
| HEIDI POWELL, | ) **MEMORANDUM THAT DOMAIN** |
| | ) **NAMES ARE ASSETS OF BANKRUPTCY** |
| Debtors. | ) **ESTATES** |
| | ) |
| | ) |

"The Arizona Heidi Powell" has made an offer to the Trustee to buy the domain name https://www.heidipowell.com for $20,000.00. Her attorneys prepared a memorandum to show that domain names are assets of bankruptcy estates, generally and specifically as to the State of Washington. A copy of the memorandum is attached. Trustee has read the memorandum and examined the case law mentioned in it. He agrees with the analysis and adopts the memorandum as his own.

DATED: February 22, 2017

/s/ Dennis Lee Burman
_____
DENNIS LEE BURMAN, WSBA #7875
Trustee in Bankruptcy

**MEMORANDUM THAT DOMAIN NAMES ARE
ASSETS OF BANKRUPTCY ESTATES**

Dennis Lee Burman, Attorney at Law
1103 Ninth Street
P.O. Box 1620
Marysville, WA 98270
Phone (360) 657-3332
Fax (360) 657-3522

# MEMORANDUM

**TO**: Dennis Berman

**FROM**: Jaburg & Wilk, P.C.

**DATE**: February 21, 2017

**RE**: Domain name as asset of bankruptcy estate in State of Washington

---

As discussed, below is the research you requested regarding whether domain names are assets of the bankruptcy estate in the State of Washington.

## I. A DOMAIN NAME IS PROPERTY OF THE BANKRUPTCY ESTATE AND MAY PROPERLY BE SOLD FOR THE BENEFIT OF CREDITORS.

With few exceptions, property of the estate consists of "*all* legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis provided). The concept of "property of the estate" is interpreted broadly. *See, e.g.*, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S. Ct. 2309, 2313, 76 L. Ed. 2d 515 (1983) ("The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad."); *In re Mila, Inc.*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010) ("Property of the estate is to be construed broadly."); *In re Porrett*, 547 B.R. 362, 366 (Bankr. D. Idaho 2016) ("The scope of the bankruptcy estate is extremely broad, including both tangible and intangible property."); *In re Palmer*, 167 B.R. 579, 585 (Bankr. D. Ariz. 1994) ("The intent of this provision is to include all property rights of the Debtor, even if the property right is contingent."); *In re Linderman*, 20 B.R. 826, 827–28 (Bankr. W.D. Wash. 1982) ("The legislative history indicates that the scope of Section 541 was intended to be extremely broad.") (internal citations omitted). The specifically enumerated exceptions to this broadly inclusive language "indicate[ ] that other exceptions should not be implied." *In re Gerwer*, 898 F.2d 730, 732 (9th Cir. 1990); *see also Matter of Cont'l Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D.

Del. 1991) ("The property is included unless it meets one of the narrow statutory exceptions.").

## A. Federal law recognizes a domain name is property.

In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA") as an amendment to the Lanham Trademark Act. 15 U.S.C. § 1125(d). Under the ACPA, a trademark owner is authorized to proceed *in personam* against an alleged "cybersquatter"—a domain name registrant who has attempted to capitalize on the trademark of another by using the mark in a domain name URL. *Id*. § 1125(d)(1). When the trademark owner is unable to locate the cybersquatter, the owner is authorized to proceed *in rem* against the infringing domain name. *Id*. § 1125(d)(2)(A). In such an action, the situs of the domain name is deemed located in the judicial district where the registrar or registry is located, or where "documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court." *Id*. § 1125(d)(2)(C)(i)–(ii).

The ACPA provision for *in rem* jurisdiction implicitly recognizes that a domain name constitutes property. In fact, the Ninth Circuit has cited the ACPA—as persuasive authority—in support of its conclusion that domain names are intangible property, subject to writs of execution under California law. *See Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 703 (9th Cir. 2010).

## B. A domain name is property under Washington law

"In the absence of any controlling federal law, 'property' and 'interest[s] in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 112 S. Ct. 1386, 1387 (1992); *see also In re Bright*, 241 B.R. 664, 666 (B.A.P. 9th Cir. 1999) ("Absent a federal provision to the contrary, a debtor's interest in property is determined by applicable state law."); *In re Pittman*, 540 B.R. 451, 455 (Bankr. W.D. Wash. 2015) ("Courts look to state law to determine property rights unless federal law requires a

2

18796-18796-00001\AKH\AKH\2412535.3

Case 12-11140-MLB    Doc 39    Filed 02/22/17    Ent. 02/22/17 15:10:43    Pg. 3 of 14

contrary result."). Although courts in the State of Washington have not definitively addressed the issue of whether domain names constitute property, Washington law suggests the courts would consider domain names property. Notably, no Washington courts have indicated domain names are not property.

### 1. The Washington Court of Appeals appears to have accepted the trial court's treatment of a domain name as property.

In *Bero v. Name Intelligence, Inc.*, the Washington Court of Appeals considered an appeal from a trial court order terminating a receivership. 195 Wash. App. 170, 172–73, 381 P.3d 71, 72–73 (2016), *review denied sub nom. Westerdal v. Name Intelligence, Inc.*, 187 Wash. 2d 1002, 386 P.3d 1085 (2017). After the owner of Name Intelligence, Inc. (a company that bought and sold domain names) failed to pay a substantial judgment, the creditor successfully requested that the trial court place the owner's companies and other property into receivership. *Id*. at 173, 381 P.3d 71, 73.

The trial court's order, appointing the receiver, authorized the receiver to collect commission on the sale of receivership property, including 1% of the gross sale price of the domain name <www.holiday.com>. *See Bero v. Name Intelligence, Inc.*, No. 13-2-25989-3 SEA, 2014 WL 7190099 *7 (Wash. Super. Ct., King Cty. Aug. 1, 2014). This indicates the trial court understood the domain name to be property subject to execution by a receiver. It does not appear any party challenged the court's treatment of the domain name as property, either in the trial court or on appeal. Thus, the court of appeals did not expressly address the issue. However, the court of appeals did not question the trial court's treatment of the domain name as property, and it proceeded—like the trial court—as if the fact was understood and accepted. *See generally* 195 Wash. App. 170, 381 P.3d 71. Thus, in at least one instance, Washington courts have treated domain names as property.

### 2. Federal courts in the Western District of Washington have treated domain names as general intangibles—as additional forms of intellectual property.

In two related district court lawsuits, both Judges Jones and Judge Zilly referred to associated copyright registrations, trademark registrations, and domain name registrations, collectively, as the "Intellectual Property" at issue. *3BA Properties LLC v. Claunch*, No. C13–979 TSZ, 2013 WL 6000065 *1 (W.D. Wash. Nov. 12, 2013); *3BA Int'l LLC v. Lubahn*, C10-829RAJ, 2012 WL 2317563, at *1 (W.D. Wash. June 18, 2012). Both cases concerned a bankruptcy debtor that failed to schedule his interest in the Intellectual Property. *See, generally, id*. After receiving a discharge, the debtor's bankruptcy was reopened and the copyrights, trademarks, and domain names were sold by the bankruptcy trustee. *Claunch*, 2013 WL 6000065 at *1; *Lubahn*, 2012 WL 2317563 at *2. The subsequent lawsuits in district court concerned, *inter alia*, the debtor's efforts to interfere with the purchaser's use of the "Intellectual Property," *Lubahn*, 2012 WL 2317563 at *3, and a legal malpractice suit brought by the debtor, *Claunch*, 2013 WL 6000065 at *2. In both cases, the federal judges recognized the bankruptcy court's sale of the Intellectual Property—including the domain names—out of the bankruptcy estate. *Claunch*, 2013 WL 6000065 at *1; *Lubahn*, 2012 WL 2317563 at *6.

Ruling on cross-motions for summary judgment in *Lubahn*, Judge Jones stated "[t]he court agrees that [the debtor's post-bankruptcy] statements about his ownership of the 3BA Intellectual Property were false as a matter of law." 2012 WL 2317563, at *6. Judge Jones recounted the circumstances of the sale, including that the Intellectual Property "became property of [Lubahn's] bankruptcy estate" and that the "bankruptcy trustee [ ] sold it to Mr. Claunch." *Id*. Judge Jones did not directly consider the validity of the sale, acknowledging instead that the bankruptcy court reserved jurisdiction over disputes related to the sale. *Id*. However, Judge Jones' express recognition of the sale indicates tacit approval of the same. *Id*.

Moreover, in *Gill v. American Mortgage Educators, Inc.*, the district court recognized that domain names are property capable of being owned and transferred by registrants. C07-5229RBL, 07-5244RBL, 2007 WL 2746946 *5 (W.D. Wash. Sep. 19, 2007). In *Gill*, Judge Leighton considered cross-petitions for preliminary injunction regarding disputed copyrights and a domain name. *Id*. at *1. As for rights to the domain name, the court first found that "[d]omain names are considered to be owned by the person who registered the name with the registrar." *Id*. Judge Leighton explained that "[t]o transfer a domain name to another party, the transfer must be recorded with the registrar." *Id*. (citing 5 Anne Gilson Lalonde, *Gilson on Trademarks* § 30.08 (2007)). Since the plaintiff had registered the domain name, and there was no showing the domain name had been transferred to the defendant, Judge Leighton concluded, the defendant "cannot pass the threshold test of demonstrating a strong likelihood of success on the merits as to ownership of the Domain name." *Id*. Thus, the district court, again, implicitly recognized that domain names are considered property.

> **3. The Ninth Circuit's reasoning, recognizing domain names as general intangible property under California law, suggests the Circuit would also consider domain names general intangible property under Washington law.**

### a) *Kremen v. Cohen*

In *Kremen v. Cohen*, the Ninth Circuit considered whether a domain name is property capable of giving rise to a claim for conversion. 337 F.3d 1024, 1029 (9th Cir. 2003). To do so, the court first evaluated "whether domain names as a class are a species of property." *Id.* at 1029 n.5. Reciting California property law, the court wrote that "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition." *Id*. at 1030 (citing *Downing v. Mun. Court of City & County of San Francisco*, 88 Cal. App. 2d 345, 350, 198 P.2d 923, 926 (1948)). In support of this proposition, the Ninth Circuit cited a California Court of Appeals decision

that, itself, relied on a Washington Supreme Court case. *See Downing*, 88 Cal. App. 2d at 350, 198 P.2d 923, 926 (citing, *inter alia*, *Great N. Ry. Co. v. Washington Elec. Co.*, 197 Wash. 627, 649, 86 P.2d 208, 217 (1939)). That 1939 Washington Supreme Court case stated that "[o]ur decisions have given the word 'property' a very broad meaning." *Washington Elec. Co.*, 197 Wash. at 649, 86 P.2d 208, 217 (collecting cases). Thus, California's broad view of property follows that of Washington law.

The *Kremen* Court then applied California's test to determine whether property rights exist: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Kremen*, 337 F.3d at 1030 (citing *Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992)). The court likened domain names to a share of corporate stock or a plot of land, finding that a domain name, indeed, contemplates a well-defined interest. *Id*. at 1030. The court explained that a domain name registrant exercises control by deciding where Internet visitors are sent—"whether by typing it into their web browsers, by following a hyperlink, or by other means." *Id*. The court continued: "Ownership is exclusive in that the registrant alone makes that decision." *Id*. And, "like other forms of property, domain names are valued, bought and sold, often for millions of dollars." *Id*. (citing Greg Johnson, *The Costly Game for Net Names*, L.A. Times, Apr. 10, 2000, at A1). Referencing the ACPA, the Circuit commented that domain names are even subject to *in rem* jurisdiction. *Id*. (citing 15 U.S.C. § 1125(d)(2)). The court then further explored a domain registrant's claim to exclusivity:

> Registering a domain name is like staking a claim to a plot of land at the title office. It informs others that the domain name is the registrant's and no one else's. Many registrants also invest substantial time and money to develop and promote websites that depend on their domain names. Ensuring that they reap the benefits of their investments reduces uncertainty

and thus encourages investment in the first place, promoting the growth of the Internet overall.

*Id*. (citing *Rasmussen & Assocs., Inc*., 958 F.2d at 900). Thus, the Ninth Circuit concluded, domain-name registrants have an intangible property right in their domain name. *Id*.

The court went on to evaluate California law regarding conversion, ultimately reversing the district court's grant of summary judgment in favor of the plaintiff. *Id*. at 1030–31. The district court had rejected the conversion claim after applying the Restatement (Second) of Torts and determining that conversion of intangible property could only occur when the associated rights were effectively "merged in" (or, represented by) a document that is, itself, converted. *Id*. at 1031. The Ninth Circuit reviewed California precedent and commented the Restatement was based on an outdated generalization that did not comport with California law. *Id*. at 1031–33. Nevertheless, the court determined domain names could still satisfy the merger requirement in any event because the Domain Name System ("DNS"), the electronic database that logs domain names, constituted an electronic form of documentation, within which domain-name rights are merged. *Id*. at 1033–35. Thus, the Ninth Circuit held that domain names may properly be the subject of a cause of action for conversion under California law.

Although Washington does not appear to have a test for property rights as specific as the California test applied in *Kremen*, Washington precedent suggests its courts would follow a similar tack. Evaluating whether stock options constitute property capable of being converted, the Washington Supreme Court recently explained that "'[p]roperty' is a term of broad significance, embracing everything that has exchangeable value, and every interest or estate which the law regards of sufficient value or judicial recognition." *In re Marriage of Langham & Kolde*, 153 Wash. 2d 553, 564, 106 P.3d 212, 218 (2005) (quoting York v. Stone, 178 Wash. 280, 285, 34 P.2d 911 (1934)). Relying on this

characterization, the court reasoned that "[g]iven the ubiquity and the importance of stock options in today's business world, there can be little doubt that stock options are property." *Id*. The court went on to adopt the "modern view" of conversion, requiring only some interest in the property allegedly converted, which, it held, more appropriately applied to intangible property. *Id*. at 565–66, 106 P.3d 212, 218–19. Thus, the Washington Supreme Court concluded that stock options—intangible property—are capable of being converted. *Id*. at 566, 106 P.3d 212, 219.

The Washington Supreme Court's expansive view of property indicates Washington has at least as broad a view as California as to what constitutes a property interest. Unquestionably, domain names have exchangeable value. As the *Kremen* Court noted, "domain names are valued, bought and sold, often for millions of dollars." 337 F.3d at 1030 (citing Greg Johnson, *The Costly Game for Net Names*, supra, at A1). Moreover, "the ubiquity and the importance of [domain names] in today's business world" likely even exceed that of stock options. While stock options may be a common benefit among larger corporations, they are less common among smaller companies. But use of a company-specific domain name is pervasive, even among smaller businesses. Indeed, the typical business would likely find itself at a distinct disadvantage without the online presence a domain name affords. In light of the significance and pervasiveness of domain names, coupled with the fact that domain names have exchangeable value, Washington courts would very likely determine that an interest in a domain name constitutes a property interest.

A Washington Court of Appeals case further demonstrates Washington's liberal view in treatment of property interests. Adopting similar reasoning as the Washington Supreme Court, the Washington Court of Appeals held that the intangible "goodwill" of a business was also capable of being converted. *Lang v. Hougan*, 136 Wash. App. 708, 719, 150 P.3d 622, 627 (2007), *as amended on denial of reconsideration* (June 19, 2007).

In *Lang*, the court of appeals reviewed the trial court's order dissolving a corporation and dividing assets between the two owners, who had had a falling out. *Id*. at 715, 150 P.3d 622, 625. The court of appeals lamented that the trial court treated the corporation's clients as if they were not a corporate asset to be fairly divided upon dissolution. *Id*. at 719, 150 P.3d 622, 627. "This ignores the realities of business, where the accounts are often a transferable asset despite the clients' lack of obligation to continue working with the business's successor." *Id*. (citation omitted). The *Lang* Court noted that the State of Washington has long recognized the customer base of a business (its "goodwill") as "a commodity on which one may place a monetary value." *Id*. Citing the Washington Supreme Court's decision in *Langham*, the court found that this goodwill—as an intangible corporate asset—was subject to conversion. *Id*. The court held that, to the extent the defendant solicited clients without fair compensation to the plaintiff, the defendant converted a corporate asset and breached her fiduciary duty to the corporation. *Id*. Thus, the court of appeals reversed the trial court and remanded for further proceedings. *Id*.

### b) *Office Depot Inc. v. Zuccarini*

In *Office Depot Inc. v. Zuccarini*, the Ninth Circuit considered whether domain names are subject to execution under California law. 596 F.3d 696, 700 (9th Cir. 2010). Like the interplay of state and federal law in determining "property of the estate," the case required the court to navigate state and federal law in determining whether domain names were subject to execution. While Rule 69, Fed. R. Civ. P., governs procedures on execution of a judgment in district court, the Rule generally requires that courts look to state law for specific guidance on execution. *Id*. at 700–01. The court, thus, began its analysis by citing the relevant portions of state law:

> California Civil Procedure Code § 695.010(a) provides, "Except as otherwise provided by law, all property of the

> judgment debtor is subject to enforcement of a money judgment."
>
> Section 699.710 provides, *inter alia,* "[A]ll property that is subject to enforcement of a money judgment ... is subject to levy under a writ of execution to satisfy a money judgment."

*Id*. at 701 (edits in original). Based on these state law provisions, the Ninth Circuit concluded that "all property of a judgment debtor can be used to satisfy a writ of execution." *Id*.

Citing its decision in *Kremen*, the *Zuccarini* Court reviewed intervening California state court decisions and concluded *Kremen* was still an accurate recitation of California law. *Id*. at 701–02. The court noted that identifying the situs of intangible property can be complicated and recognized that California law does not speak to the location of a domain name. *Id*. at 702. Thus, the court looked to the ACPA—specifically, the provision for *in rem* jurisdiction over a domain name—as persuasive authority (since the proceeding was not an action under the ACPA) that "domain names are personal property located wherever the registry or the registrar are located." *Id*. at 702–03. Based on the ACPA's persuasive language and the practicalities involved, the Ninth Circuit ultimately concluded the district court had jurisdiction over the domain names registered with the domain registry for purposes of appointing a receiver to execute a judgment against the owner of the domain name. *Id*. at 703.

Courts have reached similar conclusions under California and Washington law when evaluating property subject to execution. Like California, Washington law also broadly authorizes execution on all types of property: "All property, real and personal, of the judgment debtor that is not exempted by law is liable to execution." Wash. Rev. Code § 6.17.090. As indicated previously, in at least one instance, Washington courts have treated a domain name as property subject to execution by a receiver. *See Bero*, 195 Wash. App. at 183, 381 P.3d 71, 78.

10

18796-18796-00001\AKH\AKH\2412535.3

Case 12-11140-MLB    Doc 39    Filed 02/22/17    Ent. 02/22/17 15:10:43    Pg. 11 of 14

Relying in part on its reasoning in *Zuccarini*, the Ninth Circuit, in *Hendricks & Lewis PLLC v. Clinton*, considered whether copyrights were subject to execution under Washington law. 766 F.3d 991, 996 (9th Cir. 2014). The court cited Section 6.17.090, Wash. Rev. Code, for the proposition that "[a]ll property . . . not exempted by law" was subject to execution. *Id*. The court explained that Washington courts have long employed an expansive view of "all property" when determining what property was subject to execution. *Id*. at 996–97 (citing *Johnson v. Dahlquist*, 130 Wash. 29, 225 P. 817, 818 (1924)). The court recognized that copyrights are widely considered a form of intangible property. *Id*. at 997 (citing *Ager v. Murray*, 105 U.S. 126, 129–30 (1881)). "Therefore, unless an exception or exemption applies, Washington law permits [a judgment creditor] to execute against [a debtor's] copyrights." *Id*.

C. **A majority of other jurisdictions have determined domain names are property.**

Most courts considering the issue have concluded that domain names become property of the bankruptcy estate upon filing. *See, e.g.*, *In re Paige*, 685 F.3d 1160, 1195-96 (10th Cir. 2012) (affirming bankruptcy court's sale of domain name as property of the estate); *In re Luby*, 438 B.R. 817, 833 (Bankr. E.D. Pa. 2010) (denying discharge due, in part, to debtor's failure to disclose interest in domain names); *In re Miller*, No. 10–41308 ABC, 2011 WL 4018267 *2 (Bankr. D. Colo. Sep. 8, 2011) (holding that domain names become property of the estate upon filing the bankruptcy petition); *In re Doolittle*, 05-55696-MM, 2007 WL 4328804, at *2 (Bankr. N.D. Cal. Dec. 10, 2007) (identifying debtor's failure to list his interest in domain names among the numerous discrepancies in debtor's bankruptcy schedules; denying discharge); *In re Larry Koenig & Assoc., LLC*, 01-12829, 2004 WL 3244582, at *7 (Bankr. M.D. La. Mar. 31, 2004) (declaring domain name property of bankruptcy estate); *accord In re CTLI, LLC*, 528 B.R. 359, 373–74 (Bankr. S.D. Tex. 2015) (characterizing an interest in social media accounts as

11

professional goodwill and holding that such accounts become property of the estate upon filing the petition); *see also Sprinkler Warehouse, Inc. v. Systematic Rain, Inc*., 880 N.W.2d 16, 23 (Minn. 2016) ("[W]e observe that a majority of courts that have considered the question have concluded a domain name is personal property.").

This Court previously identified (and the undersigned found only) a single case that held debtors do not have a property interest in domain names and, thus, domain names do not become property of the bankruptcy estate. *See In re Alexandria Surveys Int'l, LLC*, 500 B.R. 817 (E.D. Va. 2013). In *In re Alexandria Surveys*, the district court reversed the bankruptcy court's determination that a debtor's unscheduled interest in a domain name could be sold as part of the bankruptcy estate. *Id*. at 820.

The U.S. District Court for the Eastern District of Virginia applied relevant *state* law to reach its decision. *Id*. at 822. The court relied on a Virginia Supreme Court decision that held a domain name could not be garnished by a judgment creditor because debtors do not have property interests in domain names. *Id*. (*Network Solutions, Inc. v. Umbro Int'l, Inc*., 259 Va. 759, 529 S.E.2d 80, 86–87 (2000)). The district court concluded that, because Virginia does not recognize an ownership interest in domain names, the domain name did not become property of the estate and could not be sold by the trustee. *Id*. at 822. The court commented that even if the debtor had a possessory interest in its use of the domain name, the interest was in the form of an executory contract that was rejected when the trustee failed to assume the service contract. *Id*. at 822–23.

In many of the cases referenced above, the parties seeking to keep domain names out of a bankruptcy estate relied heavily, if not exclusively, on the Virginia Supreme Court case, *Network Solutions Inc. v. Umbro Int'l, Inc*. However, most courts have rejected *Umbro*, determining that it does not so clearly represent the proposition that domain names are not property. For example, the Ninth Circuit, in *CRS Recovery, Inc. v.*
12

*Laxton*, found the *Umbro* case was "equivocal." 600 F.3d 1138, 1142 (9th Cir. 2010). The Virginia court had treated the domain names as contract rights while simultaneously observing that the domain registrar, itself, had taken the position that domain names are personal property. *Id*. (citing *Umbro*, 259 Va. at 769, 529 S.E.2d 80, 86). The *Umbro* Court even stated it was not essential to the outcome of the case to determine whether the lower court had correctly characterized domain names as a form of intellectual property—which is, of course, intangible property. *Id*. (citing *Umbro*, 259 Va. at 770, 529 S.E.2d 80, 86). Thus, the *Laxton* Court held that *Umbro* "did not disapprove of the characterization of domain names as property rights, but treated it as immaterial to the garnishment determination." *Id*. "*Umbro* tells us only about how Virginia law treats domain names in *garnishment* actions." *Id*. at 1143 (emphasis in original). The Ninth Circuit concluded: "[G]iven the majority of states' justifiable coalescence around understanding domain names as intangible property, we decline [debtor's] invitation to read *Umbro* more broadly than its text requires." *Id*. Thus, the only case that has determined domain names do not become property of the bankruptcy estate did so in reliance on Virginia precedent that did not definitively determine that domain names are not property.

### D. Conclusion

Domain names are property of the bankruptcy estate, capable of being sold by the bankruptcy trustee. Both federal and Washington law support such a conclusion. The Ninth Circuit's interpretation of California law directly on point suggests a similar outcome would arise under Washington law. Washington is likely among the majority of jurisdictions that consider domain names intangible property.